# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH DUVANE,<br><br>    Plaintiff,<br><br>  vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant.<br>_____ / | No. 2:11-cv-2324-CMK<br><br><br><br>MEMORANDUM OPINION AND ORDER |

       Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 14) and defendant's cross-motion for summary judgment (Doc. 16). For the reasons discussed below, the court will deny plaintiff's motion for summary judgment or remand and grant the Commissioner's cross-motion for summary judgment.

/ / /

/ / /

## I. PROCEDURAL HISTORY[1]

Plaintiff applied for social security benefits on June 16, 2008, alleging an onset of disability on January 15, 2008, due to disabilities including chronic obstructive pulmonary disease (Certified administrative record ("CAR") 21-22, 82-85). Plaintiff's claim was denied initially and upon reconsideration. Plaintiff requested an administrative hearing, which was held on August 26, 2010, before Administrative Law Judge ("ALJ") Jean R. Kerins. In an October 27, 2010, decision, the ALJ concluded that plaintiff is not disabled[2] based on the following

---

[1] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts here. The facts related to plaintiff's impairments and medical history will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 13, 2013.

2. The claimant has not engaged in substantial gainful activity since January 15, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: COPD/emphysema (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except no concentrated exposure to fumes, dusts, and gases.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on August 23, 1950 and was 57 years old, which is defined as an individual of advanced age, on the date the alleged disability onset date. The claimant subsequently changed age category to closely approaching retirement age (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.159(a)).

(CAR 12-20). After the Appeals Council declined review on January 18, 2011, this appeal

---

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

followed.

## II.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is "such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## III.  DISCUSSION

Plaintiff argues the ALJ erred in three ways:  (1) the ALJ failed to properly evaluate plaintiff's severe impairments; (2) the ALJ failed to credit plaintiff's treating physician's opinion; and (3) the ALJ improperly discredited plaintiff's testimony regarding his subjective complaints.

/ / /

### A. SEVERE IMPAIRMENTS

Plaintiff first argues that the ALJ failed to properly credit all of his severe impairments.

In order to be entitled to benefits, the plaintiff must have an impairment severe enough to significantly limit the physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c).[3]  In determining whether a claimant's alleged impairment is sufficiently severe to limit the ability to work, the Commissioner must consider the combined effect of all impairments on the ability to function, without regard to whether each impairment alone would be sufficiently severe. See Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996); see also 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523 and 416.923.  An impairment, or combination of impairments, can only be found to be non-severe if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. See Social Security Ruling ("SSR") 85-28; see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28). The plaintiff has the burden of establishing the severity of the impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings. See 20 C.F.R. §§ 404.1508, 416.908. The plaintiff's own statement of symptoms alone is insufficient. See id.

Here, plaintiff argues the ALJ erred in not finding his degenerative disc disease and carpal tunnel syndrome were severe impairments. As to those two conditions, the ALJ stated:

> Regarding the claimant's complaints of bilateral hand numbness and pain, while on August 13, 2009, a physical examination by Von Mun Lee, M.D., found positive Phalen test and positive Tinel test, he had normal strength and radial pulses were normal

---

[3] Basic work activities include: (1) walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. See 20 C.F.R. §§ 404.1521, 416.921.

bilaterally, there was no wrist swelling or erytema. Dr. Lee diagnosed bilaterally carpal tunnel syndrome (CTS) (8F/11). A nerve conduction study and EMG on October 2, 2009 found a normal study, with no evidence of right median mononeuropathy at the wrists and no evidence of right cervical radiculopathy (8F/3-4). Dr. Hyun the physician that performed the EMG, prior to the study, in his physical examination found normal examination with no weakness and no sensory deficits. When first seen for these complaints by his primary care physician, Dr. Lee, the claimant said that he had pain and numbness for the past 20 years (8F/10), which would seem to show that he had worked with this condition throughout the 20 years and it was not a reason for him stopping work. Regardless, later records from Dr. Lee do not carry a diagnosis of CTS and there seemed to be no further complaints of pain or numbness in his hands and/or writs. It appears, as he first reported to Dr. Lee, that it comes and goes and it is not a chronic condition. Therefore, it is found to be non-severe. This is supported by the orthopedist at Disability Determination Services (11F).

Regarding the claimant's neck and back complaints, an x-ray of the cervical spine on August 13, 2009 found moderate degenerative disc disease at C6-7 and mild degenerative disc disease at C4-5 and C5-6 (8F/12). Objective findings were normal gait and station, negative straight leg raising, and full range of motion; he had full strength. There is no evidence of strength loss, motor dysfunction or sensation loss. He has had minimal conservative treatment and has not been referred to physical therapy. In fact, the claimant has gone for long periods with no treatment whatsoever for any back or neck complaints. Disability Determination Services found the claimant's neck and back were non-severe (11F) and the undersigned also finds that these are non-severe impairments.

(CAR 14-15)

Plaintiff argues the ALJ's determination is not supported by the record, that there is sufficient evidence to support a finding that plaintiff's back and carpal tunnel had more than a minimal effect on his ability to function, and should have both been included in a combined analysis. Defendant contends there was no objective evidence to support plaintiff's contention that his back or wrist issues were severe impairments, that his argument is based a diagnosis that relied solely on his subjective complaints which the ALJ rejected, and which contrasted with the objective evidence and expert opinion. Defendant argues no error was made.

///

///

1       The undersigned agrees that the ALJ did not err in finding plaintiff's degenerative
2  disc disease and carpal tunnel syndrome were not severe impairments.  As the ALJ discussed,
3  plaintiff's treating physician, Dr. Lee, diagnosed plaintiff's carpal tunnel syndrome on August 13,
4  2009, noting a positive Phalen test and Tinel test.  However, his radial pulses were normal
5  bilaterally, there was no wrist swelling or erythema, and he had normal strength.  (CAR 180).
6  Plaintiff reported to Dr. Lee during that visit that he had "paid and tingling numbness of bilateral
7  hands on/off for past 20 years." (CAR 179).  Dr. Lee prescribed rest and wrist splints.  On
8  August 27, 2009, plaintiff reported to Dr. Lee that the wrist splint helped with the pain but not
9  the numbness.  Dr. Lee referred plaintiff for an EMG.  (CAR 178). The EMG was conducted on
10 October 2, 2009, by Dr. Hyun.  Dr. Hyun noted that plaintiff reported "bilateral hand pain
11 numbness and paresthesias, specifically involving the thumb and lateral hand. . . . These
12 symptoms have been present for about 10 yrs, and they are present on a constant basis.  The
13 patient denied weakness and denies dropping objects.  He has been wearing wrist splints and has
14 had some symptomatic benefit from this."  (CAR 172).  On examination, Dr. Hyun found
15 plaintiff had 5/5 strength in the bilateral upper limbs, symmetric reflexes at biceps, triceps, and
16 brachioradialis, sensation was intact to light touch, and there was no thenar or intrinsic wasting.
17 The EMG findings were normal, leading Dr. Hyun to the following impression:

> 1. This is a normal study.
> 2. There is no electrodiagnostic evidence of right median mononeuropathy at the level of the wrist (carpal tunnel).
> 3. There is no electrodiagnostic evidence of right cervical radiculopathy.

(CAR 172).

        There is no further medical evidence to support plaintiff's contention that his
carpal tunnel syndrome had more than a minimal effect on his ability to function.  The
undersigned finds that plaintiff fails to meet his burden in demonstrating otherwise.

/ / /

/ / /

As for plaintiff's back, the ALJ again found a lack of evidence to support plaintiff's contention that his back was a serious impairment. As the ALJ noted, the x-rays of plaintiff's back show mild to moderate degenerative disc disease, but on examination he had normal gait and station, negative straight leg raising, full range of motion, and full strength. (CAR 133-35, 161-62, 181). Other than a prescription for vicodin for his back pain, the undersigned finds no significant complaint or treatment notes regarding his degenerative disc disease. As the ALJ determined, plaintiff received minimal conservative treatment for this condition. Thus, plaintiff again fails to meet his burden in demonstrating this condition had more than a minimal effect on his ability to function.

The undersigned finds the ALJ's determination of plaintiff's serious impairments to be supported by substantial evidence.

**B.    MEDICAL EVIDENCE**

Plaintiff next claims the ALJ erred in rejected his treating physician's opinion without a legitimate reason for doing so.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and

convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester, 81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  See id. at 831.  In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

        Here, as to Dr. Lee's opinions, the ALJ stated:

> As for the opinion evidence, the opinion by Dr. Lee dated July 7, (or 1), [2010,] that the claimant can walk no more than one block, stand and walk less than two hours, 20 minutes, sit no more than two hours at a time, for a total of 6 hours and can lift less than 10 pounds frequently and occasionally 10 pounds (13F) is given little weight as it is not supported by Dr. Lee's own examining records. While there is no doubt that the claimant has moderate to severe COPD, there is no evidence that it would prevent him from working at jobs within the established residual functional capacity, with avoiding concentrated exposures to inhalants.  There is no basis for a limitation in sitting, standing or walking or in the minimal lifting assessed by Dr. Lee.  He apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant and seemed to uncritically accept as true most, if not all, of what the claimant reported.  Yet as explained

///

elsewhere in this decision there exists good reasons for question[ing] the reliability of the claimant's subjective complaints.

(CAR 18)

Plaintiff argues that contrary to the ALJ's decision, Dr. Lee's opinion was consistent with his treatment, and was based on objective medical evidence. He contends the ALJ rejected Dr. Lee's opinion without providing even specific and legitimate reasons for so doing. Defendant counters that the ALJ did provide reasons for rejected Dr. Lee's opinion. Specifically, defendant argues the ALJ gave two explicit reasons for rejected Dr. Lee's opinion: the record contains no basis for such extreme limitations and that Dr. Lee's opinion was based on plaintiff's subjective complaints.

The undersigned agrees that the specific reasons for rejected Dr. Lee's opinion are supported by the record. The record contains opinions from both treating and examining professionals. These examining physician's opinions are based on their own examinations and independent clinical findings, including Pulmonary Function Tests (PFT). The treating and examining doctors differ in their opinions as to the limitations in plaintiff's abilities based on their own independent examinations and independent clinical findings (PFT). Thus, the ALJ was required to resolve the conflict between the treating and examining physicians opinions, which she did. The ALJ then provided specific and legitimate reasons for her determination, including the lack of support for Dr. Lee's determination in his own treatment notes, as well as plaintiff's credibility, which is discussed further below.

The undersigned finds the ALJ did not err in resolving the conflict in the treating and examining physicians' opinions, and that the ALJ's determination was supported by specific and legitimate reasons.

**C.    PLAINTIFF'S CREDIBILITY**

Plaintiff's final contention is that the ALJ erred in rejecting plaintiff's pain and functional limitations testimony without proper reasoning.

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent

testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

As to plaintiff's credibility, after reviewing the medical records including several consultative examinations, the ALJ determined:

> Based on a review of the evidence above, the claimant's allegations regarding the degree of functional limitations in connection with shortness of breath, pain and numbness related to his impairments are not credible for the following reasons. The claimant has alleged severe limitations in sitting, standing, walking and lifting. He has stated his activities are minimal. However, his allegations are inconsistent with his level of treatment. As shown above, the claimant has received routine intermittent treatment. There are very limited positive objective findings. Instead the record shows that the claimant's use of medications was successful in managing his COPD symptoms. He has no frequent or severe respiratory exacerbations requiring extensive treatment. The claimant has not required emergency room treatment or hospitalization for breathing difficulties. He has not been referred to specialists.
>
> In [his] daily activity report, the claimant stated that his hobby was gardening and that he did this two hours a day, as well as mowed the yard, did laundry, cooked and washed dishes (1E/1). However, at the hearing, that he only pulled a few weeds and watched television. In the consultative examination, he said he could climb one flight of stairs (1F/1), yet at the hearing he said he could not climb stairs at all. Although the claimant has described activities which are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified without any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view

of the relatively weak medical evidence and other factors discussed in this decision. Overall, the claimant's reported limited daily activities are considered to be outweighed by the other factors discussed in this decision.

(CAR 17-18)

Plaintiff argues the ALJ erred in rejecting his pain and functional limits as she failed to provide clear and convincing reasons for so doing. Defendant counters that the reasons provided were clear and convincing, and that there was evidence of possible malingering which adds additional support to the ALJ's credibility determination.

Despite plaintiff's argument to the contrary, the undersigned finds the reasons the ALJ provided for discrediting plaintiff were sufficient. The ALJ provided clear and convincing reasons for her decision, including the inconsistency in the level of treatment plaintiff was receiving versus his allegations regarding the degree of his functional limitations, the limited objective findings to support such limits, and that the medications appear to successful deal with plaintiff's symptoms. The undersigned finds these reasons to be clear and convincing, and supported by the record.

In addition, as the defendant notes, at least one expert questioned plaintiff's effort during the testing putting forth the possibility that plaintiff was malingering. (CAR 158). While the ALJ did not focus on this as a reason for discrediting plaintiff's testimony, she did discuss it in her review of the medical testing. Specifically, the ALJ noted "Dr. Shrivastava noted that the claimant gave variable effort, therefore additional testing was performed in an effort to bring it into reproducible range, but it was unsuccessful (Exhibit 2F/1). A pulmonary specialist at Disability Determination Services, Dr. Kerr, reviewed the PFT evidence and noted that it was suggestive of malingering and that another PFT test was needed (5F)." (CAR 17). This is one of the "other factors" referred to in the ALJ's credibility determination, and further supports her determination.

Giving the ALJ the proper deference, the court finds no error in this credibility determination.

## IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

 1. Plaintiff's motion for summary judgment (Doc. 14) is denied;
 2. Defendant's cross-motion for summary judgment (Doc. 16) is granted; and
 3. The Clerk of the Court is directed to enter judgment and close this file.

DATED: March 29, 2013

**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE