1
2
3
4
5
6
7

8              **IN THE UNITED STATES DISTRICT COURT**

9            **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11  JOSEPH DUVANE,                          No. 2:11-cv-2324-CMK

12            Plaintiff,

13       vs.                               <u>MEMORANDUM OPINION AND ORDER</u>

14  COMMISSIONER OF SOCIAL
    SECURITY,
15
            Defendant.
16  _____/

17            Plaintiff, who is proceeding with retained counsel, brings this action for judicial

18  review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

19  Pursuant to the written consent of all parties, this case is before the undersigned as the presiding

20  judge for all purposes, including entry of final judgment.  <u>See</u> 28 U.S.C. § 636(c).  Pending

21  before the court are plaintiff's motion for summary judgment (Doc. 14) and defendant's cross-

22  motion for summary judgment (Doc. 16).  For the reasons discussed below, the court will deny

23  plaintiff's motion for summary judgment or remand and grant the Commissioner's cross-motion

24  for summary judgment.

25  / / /

26  / / /

## I.  PROCEDURAL HISTORY[1]

Plaintiff applied for social security benefits on June 16, 2008, alleging an onset of

disability on  January 15, 2008, due to disabilities including chronic obstructive pulmonary

disease (Certified administrative record ("CAR") 21-22, 82-85).  Plaintiff's claim was denied

initially and upon reconsideration.  Plaintiff requested an administrative hearing, which was held

on August 26, 2010, before Administrative Law Judge ("ALJ") Jean R. Kerins.  In an October

27, 2010, decision, the ALJ concluded that plaintiff is not disabled[2] based on the following

---

[1]    Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts here.  The facts related to plaintiff's impairments and medical history will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[2]    Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

findings:

1.      The claimant meets the insured status requirements of the Social
        Security Act through June 13, 2013.

2.      The claimant has not engaged in substantial gainful activity since
        January 15, 2008, the alleged onset date (20 CFR 404.1571 *et
        seq.*).

3.      The claimant has the following severe impairments:
        COPD/emphysema (20 CFR 404.1520(c)).

4.      The claimant does not have an impairment or combination of
        impairments that meets or medically equals one of the listed
        impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR
        404.1520(d), 404.1525 and 404.1526).

5.      After careful consideration of the entire record, the undersigned
        finds that the claimant has the residual functional capacity to
        perform medium work as defined in 20 CFR 404.1567(c) except no
        concentrated exposure to fumes, dusts, and gases.

6.      The claimant is unable to perform any past relevant work (20 CFR
        404.1565).

7.      The claimant was born on August 23, 1950 and was 57 years old,
        which is defined as an individual of advanced age, on the date the
        alleged disability onset date.  The claimant subsequently changed
        age category to closely approaching retirement age (20 CFR
        404.1563).

8.      The claimant has at least a high school education and is able to
        communicate in English (20 CFR 404.1564).

9.      Transferability of job skills is not material to the determination of
        disability because using the Medical-Vocational Rules as a
        framework supports a finding that the claimant is "not disabled,"
        whether or not the claimant has transferable job skills (See SSR
        82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and
        residual functional capacity, there are jobs that exist in significant
        numbers in the national economy that the claimant can perform (20
        CFR 404.1569 and 404.159(a)).

(CAR 12-20).  After the Appeals Council declined review on January 18, 2011, this appeal

        The claimant bears the burden of proof in the first four steps of the sequential evaluation
process.  <u>Bowen</u>, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential
evaluation process proceeds to step five.  <u>Id</u>

1  followed.

2  ## II.  STANDARD OF REVIEW

3          The court reviews the Commissioner's final decision to determine whether it is:

4  (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a

5  whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is

6  more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521

7  (9th Cir. 1996).  It is "such evidence as a reasonable mind might accept as adequate to support a

8  conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including

9  both the evidence that supports and detracts from the Commissioner's conclusion, must be

10  considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v.

11  Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's

12  decision simply by isolating a specific quantum of supporting evidence.  See Hammock v.

13  Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative

14  findings, or if there is conflicting evidence supporting a particular finding, the finding of the

15  Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

16  Therefore, where the evidence is susceptible to more than one rational interpretation, one of

17  which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.

18  Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

19  standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th

20  Cir. 1988).

21  ## III.  DISCUSSION

22          Plaintiff argues the ALJ erred in three ways:  (1) the ALJ failed to properly

23  evaluate plaintiff's severe impairments; (2) the ALJ failed to credit plaintiff's treating physician's

24  opinion; and (3) the ALJ improperly discredited plaintiff's testimony regarding his subjective

25  complaints.

26  / / /

4

## A.    SEVERE IMPAIRMENTS

Plaintiff first argues that the ALJ failed to properly credit all of his severe impairments.

In order to be entitled to benefits, the plaintiff must have an impairment severe enough to significantly limit the physical or mental ability to do basic work activities.  See 20 C.F.R. §§ 404.1520(c), 416.920(c).[3]   In determining whether a claimant's alleged impairment is sufficiently severe to limit the ability to work, the Commissioner must consider the combined effect of all impairments on the ability to function, without regard to whether each impairment alone would be sufficiently severe.  See Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996); see also 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523 and 416.923.  An impairment, or combination of impairments, can only be found to be non-severe if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.  See Social Security Ruling ("SSR") 85-28; see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28).  The plaintiff has the burden of establishing the severity of the impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings.  See 20 C.F.R. §§ 404.1508, 416.908. The plaintiff's own statement of symptoms alone is insufficient.  See id.

Here, plaintiff argues the ALJ erred in not finding his degenerative disc disease and carpal tunnel syndrome were severe impairments.  As to those two conditions, the ALJ stated:

> Regarding the claimant's complaints of bilateral hand numbness and pain, while on August 13, 2009, a physical examination by Von Mun Lee, M.D., found positive Phalen test and positive Tinel test, he had normal strength and radial pulses were normal

---

[3]    Basic work activities include: (1) walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.  See 20 C.F.R. §§ 404.1521, 416.921.

1    bilaterally, there was no wrist swelling or erytema.  Dr. Lee
      diagnosed bilaterally carpal tunnel syndrome (CTS) (8F/11).  A
2    nerve conduction study and EMG on October 2, 2009 found a
      normal study, with no evidence of right median mononeuropathy at
3    the wrists and no evidence of right cervical radiculopathy (8F/3-4).
      Dr. Hyun the physician that performed the EMG, prior to the study,
4    in his physical examination found normal examination with no
      weakness and no sensory deficits.  When first seen for these
5    complaints by his primary care physician, Dr. Lee, the claimant
      said that he had pain and numbness for the past 20 years (8F/10),
6    which would seem to show that he had worked with this condition
      throughout the 20 years and it was not a reason for him stopping
7    work.  Regardless, later records from Dr. Lee do not carry a
      diagnosis of CTS and there seemed to be no further complaints of
8    pain or numbness in his hands and/or writs.  It appears, as he first
      reported to Dr. Lee, that it comes and goes and it is not a chronic
9    condition.  Therefore, it is found to be non-severe.  This is
      supported by the orthopedist at Disability Determination Services
10   (11F).

11   Regarding the claimant's neck and back complaints, an x-ray of the
      cervical spine on August 13, 2009 found moderate degenerative
12   disc disease at C6-7 and mild degenerative disc disease at C4-5 and
      C5-6 (8F/12).  Objective findings were normal gait and station,
13   negative straight leg raising, and full range of motion; he had full
      strength.  There is no evidence of strength loss, motor dysfunction
14   or sensation loss.  He has had minimal conservative treatment and
      has not been referred to physical therapy.  In fact, the claimant has
15   gone for long periods with no treatment whatsoever for any back or
      neck complaints.  Disability Determination Services found the
16   claimant's neck and back were non-severe (11F) and the
      undersigned also finds that these are non-severe impairments.
17   (CAR 14-15)

18            Plaintiff argues the ALJ's determination is not supported by the record, that there

19   is sufficient evidence to support a finding that plaintiff's back and carpal tunnel had more than a

20   minimal effect on his ability to function, and should have both been included in a combined

21   analysis.  Defendant contends there was no objective evidence to support plaintiff's contention

22   that his back or wrist issues were severe impairments, that his argument is based a diagnosis that

23   relied solely on his subjective complaints which the ALJ rejected, and which contrasted with the

24   objective evidence and expert opinion.  Defendant argues no error was made.

25   / / /

26   / / /

1    The undersigned agrees that the ALJ did not err in finding plaintiff's degenerative

2  disc disease and carpal tunnel syndrome were not severe impairments.  As the ALJ discussed,

3  plaintiff's treating physician, Dr. Lee, diagnosed plaintiff's carpal tunnel syndrome on August 13,

4  2009, noting a positive Phalen test and Tinel test.  However, his radial pulses were normal

5  bilaterally, there was no wrist swelling or erythema, and he had normal strength.  (CAR 180).

6  Plaintiff reported to Dr. Lee during that visit that he had "paid and tingling numbness of bilateral

7  hands on/off for past 20 years." (CAR 179).  Dr. Lee prescribed rest and wrist splints.  On

8  August 27, 2009, plaintiff reported to Dr. Lee that the wrist splint helped with the pain but not

9  the numbness.  Dr. Lee referred plaintiff for an EMG.  (CAR 178).  The EMG was conducted on

10  October 2, 2009, by Dr. Hyun.  Dr. Hyun noted that plaintiff reported "bilateral hand pain

11  numbness and paresthesias, specifically involving the thumb and lateral hand. . . . These

12  symptoms have been present for about 10 yrs, and they are present on a constant basis.  The

13  patient denied weakness and denies dropping objects.  He has been wearing wrist splints and has

14  had some symptomatic benefit from this." (CAR 172).  On examination, Dr. Hyun found

15  plaintiff had 5/5 strength in the bilateral upper limbs, symmetric reflexes at biceps, triceps, and

16  brachioradialis, sensation was intact to light touch, and there was no thenar or intrinsic wasting.

17  The EMG findings were normal, leading Dr. Hyun to the following impression:

18          1. This is a normal study.
        2. There is no electrodiagnostic evidence of right median
19        mononeuropathy at the level of the wrist (carpal tunnel).
        3. There is no electrodiagnostic evidence of right cervical
20        radiculopathy.

21  (CAR 172).

22          There is no further medical evidence to support plaintiff's contention that his

23  carpal tunnel syndrome had more than a minimal effect on his ability to function.  The

24  undersigned finds that plaintiff fails to meet his burden in demonstrating otherwise.

25  / / /

26  / / /

1    As for plaintiff's back, the ALJ again found a lack of evidence to support

2    plaintiff's contention that his back was a serious impairment.  As the ALJ noted, the x-rays of

3    plaintiff's back show mild to moderate degenerative disc disease, but on examination he had

4    normal gait and station, negative straight leg raising, full range of motion, and full strength.

5    (CAR 133-35, 161-62, 181).  Other than a prescription for vicodin for his back pain, the

6    undersigned finds no significant complaint or treatment notes regarding his degenerative disc

7    disease.  As the ALJ determined, plaintiff received minimal conservative treatment for this

8    condition.  Thus, plaintiff again fails to meet his burden in demonstrating this condition had more

9    than a minimal effect on his ability to function.

10    The undersigned finds the ALJ's determination of plaintiff's serious impairments

11    to be supported by substantial evidence.

12    **B.    MEDICAL EVIDENCE**

13    Plaintiff next claims the ALJ erred in rejected his treating physician's opinion

14    without a legitimate reason for doing so.

15    The weight given to medical opinions depends in part on whether they are

16    proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d

17    821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating

18    professional, who has a greater opportunity to know and observe the patient as an individual,

19    than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285

20    (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given

21    to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4

22    (9th Cir. 1990).

23    In addition to considering its source, to evaluate whether the Commissioner

24    properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are

25    in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an

26    uncontradicted opinion of a treating or examining medical professional only for "clear and

1  convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.

2  While a treating professional's opinion generally is accorded superior weight, if it is contradicted

3  by an examining professional's opinion which is supported by different independent clinical

4  findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035,

5  1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be

6  rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester,

7  81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of

8  the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a

9  finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and

10  legitimate reasons, the Commissioner must defer to the opinion of a treating or examining

11  professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional,

12  without other evidence, is insufficient to reject the opinion of a treating or examining

13  professional.  See id. at 831.  In any event, the Commissioner need not give weight to any

14  conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111,

15  1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion);

16  see also Magallanes, 881 F.2d at 751.

17            Here, as to Dr. Lee's opinions, the ALJ stated:

18            As for the opinion evidence, the opinion by Dr. Lee dated July 7,
             (or 1), [2010,] that the claimant can walk no more than one block,
19           stand and walk less than two hours, 20 minutes, sit no more than
             two hours at a time, for a total of 6 hours and can lift less than 10
20           pounds frequently and occasionally 10 pounds (13F) is given little
             weight as it is not supported by Dr. Lee's own examining records.
21           While there is no doubt that the claimant has moderate to severe
             COPD, there is no evidence that it would prevent him from
22           working at jobs within the established residual functional capacity,
             with avoiding concentrated exposures to inhalants.  There is no
23           basis for a limitation in sitting, standing or walking or in the
             minimal lifting assessed by Dr. Lee.  He apparently relied quite
24           heavily on the subjective report of symptoms and limitations
             provided by the claimant and seemed to uncritically accept as true
25           most, if not all, of what the claimant reported.  Yet as explained

26  / / /

1   elsewhere in this decision there exists good reasons for
    question[ing] the reliability of the claimant's subjective
2   complaints.

3   (CAR 18)

4          Plaintiff argues that contrary to the ALJ's decision, Dr. Lee's opinion was

5   consistent with his treatment, and was based on objective medical evidence.  He contends the

6   ALJ rejected Dr. Lee's opinion without providing even specific and legitimate reasons for so

7   doing.  Defendant counters that the ALJ did provide reasons for rejected Dr. Lee's opinion.

8   Specifically, defendant argues the ALJ gave two explicit reasons for rejected Dr. Lee's opinion:

9   the record contains no basis for such extreme limitations and that Dr. Lee's opinion was based on

10  plaintiff's subjective complaints.

11         The undersigned agrees that the specific reasons for rejected Dr. Lee's opinion are

12  supported by the record.  The record contains opinions from both treating and examining

13  professionals.  These examining physician's opinions are based on their own examinations and

14  independent clinical findings, including Pulmonary Function Tests (PFT).  The treating and

15  examining doctors differ in their opinions as to the limitations in plaintiff's abilities based on

16  their own independent examinations and independent clinical findings (PFT).  Thus, the ALJ was

17  required to resolve the conflict between the treating and examining physicians opinions, which

18  she did.  The ALJ then provided specific and legitimate reasons for her determination, including

19  the lack of support for Dr. Lee's determination in his own treatment notes, as well as plaintiff's

20  credibility, which is discussed further below.

21         The undersigned finds the ALJ did not err in resolving the conflict in the treating

22  and examining physicians' opinions, and that the ALJ's determination was supported by specific

23  and legitimate reasons.

24  ## C.   PLAINTIFF'S CREDIBILITY

25         Plaintiff's final contention is that the ALJ erred in rejecting plaintiff's pain and

26  functional limitations testimony without proper reasoning.

1    The Commissioner determines whether a disability applicant is credible, and the

2    court defers to the Commissioner's discretion if the Commissioner used the proper process and

3    provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit

4    credibility finding must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903

5    F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d

6    821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible

7    and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative

8    evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not

9    credible must be "clear and convincing."  See id.; see also Carmickle v. Commissioner, 533 F.3d

10   1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007),

11   and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

12   If there is objective medical evidence of an underlying impairment, the

13   Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

14   because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d

15   341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

16   > The claimant need not produce objective medical evidence of the
17   > [symptom] itself, or the severity thereof.  Nor must the claimant produce
>    objective medical evidence of the causal relationship between the
>    medically determinable impairment and the symptom.  By requiring that
18
19   > the medical impairment "could reasonably be expected to produce" pain or
>    another symptom, the Cotton test requires only that the causal relationship
>    be a reasonable inference, not a medically proven phenomenon.
20
21   80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799

     F.2d 1403 (9th Cir. 1986)).
22

23   The Commissioner may, however, consider the nature of the symptoms alleged,

     including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell,
24
     947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the
25
     claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent
26

testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a

prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5)

physician and third-party testimony about the nature, severity, and effect of symptoms.  See

Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the

claimant cooperated during physical examinations or provided conflicting statements concerning

drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the

claimant testifies as to symptoms greater than would normally be produced by a given

impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See

Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

As to plaintiff's credibility, after reviewing the medical records including several

consultative examinations, the ALJ determined:

> Based on a review of the evidence above, the claimant's allegations
> regarding the degree of functional limitations in connection with
> shortness of breath, pain and numbness related to his impairments
> are not credible for the following reasons.  The claimant has
> alleged severe limitations in sitting, standing, walking and lifting.
> He has stated his activities are minimal.  However, his allegations
> are inconsistent with his level of treatment.  As shown above, the
> claimant has received routine intermittent treatment.  There are
> very limited positive objective findings.  Instead the record shows
> that the claimant's use of medications was successful in managing
> his COPD symptoms.  He has no frequent or severe respiratory
> exacerbations requiring extensive treatment.  The claimant has not
> required emergency room treatment or hospitalization for breathing
> difficulties.  He has not been referred to specialists.
>
> In [his] daily activity report, the claimant stated that his hobby was
> gardening and that he did this two hours a day, as well as mowed
> the yard, did laundry, cooked and washed dishes (1E/1).  However,
> at the hearing, that he only pulled a few weeds and watched
> television.  In the consultative examination, he said he could climb
> one flight of stairs (1F/1), yet at the hearing he said he could not
> climb stairs at all.  Although the claimant has described activities
> which are fairly limited, two factors weigh against considering
> these allegations to be strong evidence in favor of finding the
> claimant disabled.  First, allegedly limited daily activities cannot be
> objectively verified without any reasonable degree of certainty.
> Secondly, even if the claimant's daily activities are truly as limited
> as alleged, it is difficult to attribute that degree of limitation to the
> claimant's medical condition, as opposed to other reasons, in view

1          of the relatively weak medical evidence and other factors discussed
           in this decision.  Overall, the claimant's reported limited daily
2          activities are considered to be outweighed by the other factors
           discussed in this decision.
3    (CAR 17-18)

4               Plaintiff argues the ALJ erred in rejecting his pain and functional limits as she

5    failed to provide clear and convincing reasons for so doing.  Defendant counters that the reasons

6    provided were clear and convincing, and that there was evidence of possible malingering which

7    adds additional support to the ALJ's credibility determination.

8               Despite plaintiff's argument to the contrary, the undersigned finds the reasons the

9    ALJ provided for discrediting plaintiff were sufficient.  The ALJ provided clear and convincing

10   reasons for her decision, including the inconsistency in the level of treatment plaintiff was

11   receiving versus his allegations regarding the degree of his functional limitations, the limited

12   objective findings to support such limits, and that the medications appear to successful deal with

13   plaintiff's symptoms.  The undersigned finds these reasons to be clear and convincing, and

14   supported by the record.

15              In addition, as the defendant notes, at least one expert questioned plaintiff's effort

16   during the testing putting forth the possibility that plaintiff was malingering.  (CAR 158).  While

17   the ALJ did not focus on this as a reason for discrediting plaintiff's testimony, she did discuss it

18   in her review of the medical testing.  Specifically, the ALJ noted "Dr. Shrivastava noted that the

19   claimant gave variable effort, therefore additional testing was performed in an effort to bring it

20   into reproducible range, but it was unsuccessful (Exhibit 2F/1).  A pulmonary specialist at

21   Disability Determination Services, Dr. Kerr, reviewed the PFT evidence and noted that it was

22   suggestive of malingering and that another PFT test was needed (5F)."  (CAR 17).  This is one of

23   the "other factors" referred to in the ALJ's credibility determination, and further supports her

24   determination.

25              Giving the ALJ the proper deference, the court finds no error in this credibility

26   determination.

1

**IV.  CONCLUSION**

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

1.      Plaintiff's motion for summary judgment (Doc. 14) is denied;

2.      Defendant's cross-motion for summary judgment (Doc. 16) is granted; and

3.      The Clerk of the Court is directed to enter judgment and close this file.

DATED:  March 29, 2013

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE

14